Argued and submitted July 20, 2000, affirmed April 3, petition for review denied
July 16, 2002 (334 Or 397)

## Stanley W. DEUPREE,
### Trustee of the Philip W. Deupree Trust U.T.A.D.
### November 9, 1999 and Donald Grissom,
*Petitioners,*

*v.*

## DEPARTMENT OF TRANSPORTATION,
*Respondent.*

### 74871 and 74872; A106690

43 P3d 1122

Robert E. Bluth argued the cause for petitioners. With him on the briefs were Richard Billin and Bluth & Billin, P.C.

Holly Ann Vance, Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before Edmonds, Presiding Judge, and Linder and Armstrong, Judges.

EDMONDS, P. J.

Armstrong, J., concurring in part and dissenting in part.

## EDMONDS, P. J.

Petitioners seek review of an order of the Department of Transportation (ODOT) canceling two permits for approach roads, located at mile posts (MP) 9.79 and 9.81 on Highway 62 (the highway). We review ODOT's order for substantial evidence and errors of law, ORS 183.482(8), and affirm.

The material facts are undisputed. Petitioners own real property in the City of Eagle Point that abuts the highway. Until 1999, petitioners enjoyed direct access to the highway by approach road permits at two locations. The disputed permits were issued to petitioners' predecessors in 1962 and 1965. The approach roads connect with but do not cross the highway. In November 1998, ODOT issued notices of intent to cancel both permits, in the context of a project that included widening Highway 62 and constructing a raised median. Petitioners filed objections to the cancellations and requested a hearing. In his final order canceling the permits, ODOT's Executive Deputy Director adopted the conclusion of the agency's hearing officer that ORS 374.305, ORS 374.310 and OAR 734-050-0050 together provide authority for ODOT to cancel the approach road permits. He also found that petitioners "will have reasonable access to their property by means of access off old Highway 62." Petitioners filed this petition for review, challenging ODOT's authority to cancel its approach permits.[1]

Citing *Danmark Publishing, Inc. v. Dept. of Justice*, 108 Or App 382, 386, 816 P2d 629 (1991), petitioners assert on judicial review that an agency has only the authority that is specifically conferred on it by statute, that an agency cannot expand its authority by administrative rules, and that ODOT's statutory power under ORS 374.305 and ORS 374.310 does not include the authority to issue notices to cancel the permits in question, to hold contested case hearings, or to cancel the permits. In petitioners' view, ODOT's actions

---

[1] In a separate proceeding, petitioners sought damages against ODOT for a change in the grade of the highway, ORS 105.755; and brought claims for inverse condemnation and a violation of 42 USC § 1983. The trial court granted ODOT's motion for summary judgment in that proceeding, and we affirmed. *Deupree v. ODOT*, 173 Or App 623, 22 P3d 773 (2001).

exceeded its statutory authority and for that reason are unlawful and void. ODOT defends all of its actions as falling within its authority granted by the legislature.

■      We begin with a survey of the relevant statutes. ORS 374.305 provides:

"(1)   No person, firm or corporation may place, build or construct on the right of way of any state highway or county road, any approach road * * * or change the manner of using any such approach road without first obtaining written permission from the Department of Transportation * * *.

"(2)   After written notice of not less than 10 days to the permittee and an opportunity for a hearing, the department with respect to crossings over a state highway * * * *may abolish any crossing at grade by a private road* or *may alter or change any private road crossing* when the public safety, public convenience and the general welfare require the alternation or change.

"(3)   As used in ORS 374.305 to 374.330:

"(a)   'Approach road' includes a private road that crosses a state highway or a county road.

"(b)   'Private road crossing' means a privately owned road designed for use by trucks which are prohibited by law from using state highways, county roads or other public highways." (Emphasis added.)

To construct an approach road, a person must obtain written permission from ODOT. Under ORS 374.305(3)(a), an "approach road" includes a private road that crosses a state highway or a county road. Under ORS 374.305(2), ODOT may abolish any crossing by a private road with 10 days' notice and an opportunity for hearing. Thus, ORS 374.305(2) provides express authorization for abolishing approach roads that cross a highway or county road.

ORS 374.310 provides, in relevant part:

"(1)   The Department of Transportation * * * shall adopt reasonable rules and regulations and may issue permits, not inconsistent with law, for the use of the rights of way of such highways and roads for the purposes described in ORS 374.305. * * *

"(2)   Such rules and regulations and such permits shall include such provisions, terms and conditions as in the judgment of the granting authority may be in the best interest of the public for the protection of the highway or road and the traveling public * * * [.]"

Under ORS 374.310, ODOT is required to adopt administrative rules for the implementation of ORS 374.305 and may issue permits for the use of rights-of-way for approach roads. ORS 374.310(2) grants broad authority to ODOT to include provisions in its rules and permits that in its judgment "may be in the best interest of the public for the protection of the highway or road or the traveling public."

ORS 374.320(1) provides, in part:

"Upon failure of the applicant to construct or maintain the particular approach road, facility, thing or appurtenance in accordance with the rules and regulations and the conditions of the permit, the Department of Transportation or the county governing body shall, after the expiration of 30 days following the transmittal of a written notice to the applicant, at applicant's expense, remove all such installations from the right of way or reconstruct, repair or maintain any such installation in accordance with or as required by such rules and regulations and the conditions of such permit."

ODOT is required to remove approach roads from the right-of-way that are not constructed in accordance with ODOT's rules or the conditions of the permit.

ODOT's pertinent administrative rule, at the relevant time codified at OAR 734-050-0050, provided:

"(1)   Unless otherwise provided in the Special Provisions, the permit shall be in effect for an indefinite period of time from and after the date issued, unless sooner revoked by mutual consent, or by the Engineer for failure of the applicant to abide by the terms and conditions of the permit, or by operation of law.

"(2)   Failure of the applicant to comply with any of the terms and conditions of the permit shall be sufficient cause for cancellation of the permit and may result in removal of the facility by the Department at the applicant's expense as provided in ORS 374.320.

"(3)    The permit, the privileges granted herein and the obligations of the applicant thereby shall be binding upon the successors and assigns of the applicant.

"(4)    If the applicant fails to complete installation of the facility covered by the permit within the period specified in the permit, the permit shall be deemed null and void and all privileges thereunder forfeited, unless a written extension of time is obtained from the District Manager.

"(5)    The construction, maintenance, operation and use of the facility is subject to the paramount control of the legislature over the state highway system and no right or privilege granted by the permit shall be deemed or construed to be beyond the power or authority of the legislature to control the state highway system. Applicant in accepting the permit acknowledges that the rights and privileges granted thereby may at any time be changed or abrogated by legislative action."[2]

The rule describes the indefinite duration of a permit and the specific circumstances under which a permit must be canceled.

■        ODOT defends its cancellation of the permit for the approach road at MP 9.79 by relying on its authority under ORS 374.320(1) and OAR 734-050-0050(2) to cancel a permit upon the failure of an applicant to comply with the permit's terms and conditions. *See also* OAR 734-056-0065 ("permit must be obtained whenever there is a change in use of an approach road"); ORS 374.305(1) (change in the manner of using approach road requires ODOTs written permission). As stated in ODOT's findings:

"The approach road permit that was granted at MP 9.79 was granted for access to a grocery store. A trailer sales outlet currently occupies the building which previously housed the grocery store. The existing approach road permit at MP 9.79 is invalid in that there is no grocery store on Petitioners' property."

---

[2] ODOT's rules will be cited and discussed in this opinion as they were codified and as they read at the times of the events. OAR 734-050-0050 was subsequently recodified as OAR 734-051-0300, and other ODOT rules that will play some role in our discussion have also been recodified in OAR chapter 734, division 51.

Those findings are supported by substantial evidence. We agree with ODOT that it was authorized under both ORS 374.320(1) and OAR 734-050-0050(2) to cancel the permit at MP 9.79 because of petitioners' failure to comply with its terms and conditions. Consequently, we affirm ODOT's cancellation of the permit for the approach road at MP 9.79.[3]

■     Other than ORS 374.305(2), ORS 374.320 and OAR 734-050-0050(2), no statute or rule makes express reference to the cancellation of an approach road permit.[4] ODOT says that the authority to cancel the permit at MP 9.81 has its source in the state's broad authority to regulate its highways, including access points to and from those highways, whenever necessary to protect the safety of the traveling public. *See Dept. of Transportation v. DuPree*, 154 Or App 181, 961 P2d 232, *rev den* 327 Or 621 (1998), *cert den* 526 US 1019 (1999); *Curran v. ODOT*, 151 Or App 781, 784, 951 P2d 183 (1997). Specifically, ODOT points out that ORS 374.310(1) grants it authority "to adopt reasonable rules and regulations" and to issue permits for the use of rights of way on state highways for the purposes described in ORS 374.305. ORS 374.310(2) states that those rules, regulations and permits "shall include such provisions, terms and conditions as in the judgment of the granting authority may be in the best interest of the public for the protection of the highway or road and traveling public." We agree with ODOT that the plain text of ORS 374.310(1) and (2) encompasses the authority to adopt rules and issue permits that provide for the cancellation of approach road permits when it is "in the best interest

---

[3] In its order, ODOT also relied on petitioners' putative violation of OAR 734-050-0025(10). ODOT concedes in its brief to us that it erred in that regard.

[4] We note that after the Executive Deputy Director's order in this proceeding, the legislature enacted Oregon Laws 1999, chapter 972, section 3, which provides, in part:

"(1) When the Department of Transportation closes an approach road for which a permit was issued under ORS 374.310 or denies an application for an approach road permit submitted pursuant to a grant or reservation of access contained in a contract, condemnation judgment or recorded deed, and the closure or denial is not the result of conditions contained in the contract, condemnation judgment, recorded deed or permit, a person holding an interest in the real property benefited by the access or proposed access may file a claim for relief as a contested case under ORS 183.415 to 183.500."

The law is not retroactive, so it does not apply to this proceeding; it is scheduled to sunset on January 1, 2004. Or Laws 1999, ch 972, § 5.

of the public for the protection of the highway or road and traveling public."

Petitioners assert that the statutory context shows that ODOT lacks the authority to revoke approach permits. Petitioners note first that the statutory provisions relating specifically to approach roads, ORS 374.305, ORS 374.310, and ORS 374.315, deal expressly only with the *issuance* of permits and the regulation and *maintenance* of approach roads but make no reference to the *cancellation* of approach roads, with the exception of limited circumstances described in ORS 374.305(2)· and ORS 374.320. In contrast, ORS 374.305(2) provides for the abolition of *crossings*, *i.e.*, approach roads that are *private crossings* and *private road crossings*, after notice and hearing; by inference, petitioners assert, it can be reasoned that the legislature intended to provide for the abolition of crossings but did not intend to provide for the cancellation of other approach road permits except in the limited circumstances described in ORS 374.320. Thus, in petitioners' view, once the state has issued a permit for the construction of an approach road, there are no circumstances, other than those specifically identified in the statutes, under which the permit may be canceled or revoked. Petitioners also point out that ORS chapter 374 contains a "grandfather clause," ORS 374.330, that expressly provides that legislative amendments enacted in 1967 adding subsections (2) and (3) to ORS 374.305, relating to private crossings and the definitions of approach roads and crossings, do not apply to any approach road "lawfully placed or constructed" before their effective dates. Petitioners cite that provision as a further indication that the legislature intended that approach roads be treated differently from crossings.

We note that, before it was amended in 1967, ORS 374.310(2) (1965) contained general language similar to the current language of the statute on which we rely in support of our conclusion that ODOT is authorized to provide for the cancellation of approach permits:

"(1) The State Highway Commission with respect to state highways * * * shall adopt reasonable rules and regulations and may issue permits, not inconsistent with law,

for the construction of any approach road, facility, thing or appurtenance upon rights of way.

"(2)   Such rules and regulations and such permits may include, but need not be limited to, provisions for construction of culverts under approaches, requirements as to depth of fills over culverts and requirements for drainage facilities and curbs, islands and other facilities for traffic channelization as may be deemed necessary. *Any such permit issued may contain such terms and conditions as in the judgment of the granting authority may be in the best interests of the public.*" (Emphasis added.)

Thus, contrary to the dissent's assertion, at the time that the permit was issued for an approach road at MP 9.81, as now, the agency had broad statutory authority to provide by administrative rule for terms and conditions relating to approach roads that in its judgment are in the best interests of the public. As we have said, the legislature's delegation of authority to ODOT in ORS 374.310 encompasses the authority to adopt administrative rules and to issue permits that provide for the cancellation of approach permits if such action is in the best interest of the public for the protection of the highway or road and the traveling public. The fact that the legislature has granted authority in ORS 374.320 for ODOT to cancel a permit when the applicant fails to construct or maintain the approach road authorized by the permit does not limit ODOT's authority under ORS 374.310 to adopt rules or to issue permits that provide for cancellation in other circumstances consistent with ORS 374.310. *See Pacific Northwest Bell Telephone Co. v. Katz*, 116 Or App 302, 310, 841 P2d 652 (1992), *rev den* 316 Or 528 (1993).

▪      That does not end our inquiry, however. The follow-up question is whether ODOT has acted to implement its authority under ORS 374.310 to provide for the cancellation of the permits at issue in this case. ODOT asserts that its administrative rule, OAR 734-050-0050(5), is an implementation of its authority to cancel permits. That provision, quoted earlier, refers to the "paramount control of the legislature over the state highway system" and provides that a permittee "acknowledges that the rights and privileges granted by [the permit] may at any time be abrogated by legislative action." ODOT seeks to close the apparent gap

between the term "legislative action" in the rule and the agency action here by postulating "that 'legislative action' includes the broad regulatory powers granted to ODOT pursuant to ORS 374.310."

ODOT's argument fails. The term "the legislature" cannot reasonably be understood to mean ODOT, and the term "legislative action" cannot plausibly be read to include quasi-judicial agency actions of the kind involved here. We hold that OAR 734-050-0050(5) does not authorize the cancellation of the permit at MP 9.81.

ODOT also relies on the terms of the permit itself, which it asserts contains conditions that reserve its right to cancel the permits. The permit contains a provision that "the applicant in accepting this permit accepts it knowing that the rights and privileges herein granted may at any time be defeated and abrogated by legislative act." For the reasons explained in the above paragraph, we conclude that that provision does not authorize ODOT's cancellation of the permit.

Two other provisions of petitioners' permit for MP 9.81 contemplate the removal of the approach road in different contexts. Paragraph 7 provides that

"[i]f, for any reason (other than reconstruction or widening of the highway), it later becomes necessary or desirable for the State to remove such approach road, it shall be removed by the State at the expense of the applicant, and credit will be allowed for such materials, if any, as are salvaged for re-use by the State."

Although that paragraph describes circumstances under which the removal of an approach road is contemplated (*i.e.*, when it becomes "necessary or desirable"), it is not directly applicable here, because ODOT's project involved a widening of the highway.

Paragraph 8 of petitioners' permit provides, in part:

"If in the event of reconstruction or widening of any highway, it becomes necessary to remove, alter or reconstruct the approach road constructed under the authority of this permit, the cost of such removal or replacement to a like width and condition will be borne by State."

We conclude that paragraph 8 is specifically applicable to the circumstances of this case. ODOT's authority under the permit to "remove" an approach road when necessary during a widening or reconstruction is the functional equivalent of authority to cancel the permit for the approach road, and we conclude that the condition in paragraph 8 is a condition that is authorized by the broad authority conferred on ODOT by ORS 374.310. In authorizing ODOT to remove the approach road as necessary in the context of a widening or reconstruction of the highway, the permit effectively authorizes a cancellation of the permit for the road in those circumstances. Any cancellation is of course subject to challenge for the reason that it is inconsistent with the permit or with the policy stated in ORS 374.310 that the agency act in the best interest of the public for the protection of the highway and the traveling public. The contested case hearing process provided by ODOT is the forum for such a challenge. *See* ORS 183.310(2)(a)(A), (B).

We hold that ODOT did not exceed its authority in notifying petitioners of its intention to cancel its approach permit at MP 9.81 and in holding a hearing to determine whether the permit should be canceled. In his order, the Executive Deputy Director explained why the cancellation of the permit was necessary. There is no challenge in this petition for judicial review to the merits of that determination.

We reject petitioners' other arguments without further discussion.

Affirmed.

**ARMSTRONG, J.,** concurring in part and dissenting in part.

The majority concludes that the Oregon Department of Transportation (ODOT) acted within its authority when it canceled petitioners' permits for approach roads located at mile posts (MP) 9.79 and 9.81 on Highway 62. I agree with its decision to uphold the cancellation of the permit at MP 9.79. I disagree, however, with its decision on the permit for the approach road at MP 9.81.

The majority upholds the cancellation of the MP 9.81 permit on the ground that paragraph 8 of the permit provides

authority for the cancellation. The majority is wrong. Paragraph 8 provides:

> "If in the event of reconstruction or widening of any highway, it becomes necessary to remove, alter or reconstruct the approach road constructed under the authority of this permit, *the cost of such removal or replacement to a like width and condition will be borne by State.*" (Emphasis added.)

That paragraph addresses who is to bear the cost of physically removing or replacing the tangible components of an approach road that must be removed or replaced as a result of the reconstruction or widening of a highway. The paragraph does not explicitly or implicitly authorize ODOT to cancel a permit for an approach road. If ODOT had intended the permit to give it the authority to cancel the permit when necessary to widen a road or to promote public safety, it would have said so.

The reason that ODOT did not include a provision of that kind in the permit is because the statutes under which it operated when it issued the permit in 1965 did not give it the authority to cancel a permit. At that time, ORS 374.305 (1965) provided:

> "No person, firm or corporation may place, build or construct on the right of way of any state highway or county road, any approach road, structure, pipeline, ditch, cable or wire, or any other facility, thing or appurtenance without first obtaining written permission from [ODOT[1]] with respect to state highways or the county court or board of county commissioners with respect to county roads."

ORS 374.310 (1965) provided, in turn, as relevant:

> "(1) [ODOT] with respect to state highways and the county court or board of county commissioners with respect to county roads shall adopt reasonable rules and regulations and may issue permits, not inconsistent with law, for the construction or placing of any approach road, structure, pipeline, ditch, cable or wire, or any other facility, thing or

---

[1] In 1965, the statutes gave the State Highway Commission authority to issue permits and to adopt rules governing the placement of structures in the rights of way of state highways. Current law gives ODOT that authority. I will refer to ODOT as the relevant agency in this opinion.

appurtenance upon rights of way; provided, however, that [ODOT] shall issue no permit for the construction of any approach road at a location where no rights of access exist between the highway and abutting real property.

"(2) Such rules and regulations and such permits may include, but need not be limited to, provisions for construction of culverts under approaches, requirements as to depth of fills over culverts and requirements for drainage facilities and curbs, islands and other facilities for traffic channelization as may be deemed necessary. Any such permit issued may contain such terms and conditions as in the judgment of the granting authority may be in the best interest of the public."

The legislature amended those statutes in 1967. The amendments significantly altered ODOT's authority to regulate approach roads and other structures placed on the right of way of state highways. Specifically, the amendments gave ODOT explicit authority to eliminate or alter a private road crossing, which is a type of approach road, when "public safety, public convenience and the general welfare require" it. ORS 374.305(2) (1967). It also gave ODOT explicit authority to adopt rules and to issue permits containing

"such provisions, terms and conditions as in the judgment of [ODOT] may be in the best interest of the public for the protection of the highway or road and the traveling public." ORS 374.310(2) (1967).

Furthermore, the 1967 amendments also imposed the following restriction on the application of the amendments to approach roads and other structures that preexisted the amendments:

"Nothing in ORS 374.305 or 374.310 as such sections are amended by chapter 497, Oregon Laws 1967, shall be deemed to affect any approach road, structure, pipeline, ditch, cable or wire, or other facility, thing or appurtenance lawfully placed or constructed upon the rights of way of any state highway or county road prior to September 13, 1967." ORS 374.330(2)(a) (1967).

The 1967 amendments broadened ODOT's authority to regulate approach roads and other structures but, as a result of ORS 374.330(2)(a), that broadened authority does

*not* apply to approach roads and other structures that pre-existed the 1967 amendments, such as the MP 9.81 approach road. However, if ODOT and the majority are right about ODOT's authority to cancel the MP 9.81 permit to promote public safety, then the 1967 amendments to ORS 374.305, ORS 374.310, and ORS 374.330 were pointless. That is because the authority to cancel a permit for an approach must have preexisted the 1967 amendments, because the 1967 amendments are inapplicable to approach roads established before 1967. But if the authority to cancel approach road permits to promote public safety preexisted the 1967 amendments, then it was unnecessary to amend ORS 374.305 to give ODOT explicit authority to abolish one type of approach road, a private road crossing, to promote "public safety, public convenience and the general welfare." And it also served no purpose to make that newly granted authority applicable only to approach roads built *after* the 1967 amendment because, if ODOT and the majority are right, ODOT already had the authority to cancel private road crossing permits for roads built *before* 1967.

I reject ODOT's and the majority's reasoning. The legislature has been consistently wary of giving ODOT and local governments authority to restrict the use of public roads in a way that affects what the legislature believes to be vested private rights of access to those roads. *See, e.g.*, *Douglas County v. Briggs*, 286 Or 151, 593 P2d 1115 (1979); *cf.* ORS 374.330(1) (1957 amendments to ORS 374.305 and ORS 374.310 made applicable only to structures constructed after 1957). That is why the legislature chose to restrict its 1967 grant of broadened authority over approach roads and other structures to those structures built after 1967. That means that the authority granted by the 1967 amendments does not apply to the MP 9.81 approach road permit. Because it does not, I do not believe that ODOT has the authority to cancel the permit, which is why the permit does not purport to give ODOT that authority. I respectfully dissent, therefore, from the majority's decision to uphold ODOT's order that cancelled the permit.