Argued and submitted April 14, rule held valid September 10, 2003

## MANAGED HEALTHCARE NORTHWEST, INC., and Providence Health Plan, Inc., *Petitioners,*

*v.*

## DEPARTMENT OF CONSUMER AND BUSINESS SERVICES, *Respondent.*

02-053; A117587

75 P3d 912

Jerald P. Keene argued the cause and filed the briefs for petitioners.

Judy C. Lucas, Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Haselton, Presiding Judge, and Deits, Chief Judge, and Wollheim, Judge.

WOLLHEIM, J.

## WOLLHEIM, J.

■    Petitioners, a group of Oregon workers' compensation managed care organizations (MCOs), seek judicial review of OAR 436-015-0070(2). ORS 183.400. OAR 436-015-0070 provides, in part:

"(1)  *The MCO shall authorize a physician who is not a member* of the MCO to provide medical services to an enrolled worker if the physician qualifies as a primary care physician [PCP]. For the purposes of this rule, *the physician must:*

"* * * * *

"(d)  *Agree to comply with all terms and conditions* regarding services governed by the MCO. For purposes of this section, the phrase 'all terms and conditions regarding services governed by the MCO' means MCO treatment standards, protocols, utilization review, peer review, dispute resolution, billing and reporting procedures, and fees for services * * *.

"* * * * *

"(2)  *The MCO cannot deny authorization of a primary care physician based on past practices.*"

(Emphasis added.) For the reasons that follow, we determine that the rule is valid.

Under ORS 183.400(4), we may invalidate a rule only if we conclude that it violates the constitution, exceeds the agency's statutory authority, or was adopted without compliance with applicable rulemaking procedures. Petitioners do not contend that the challenged rule was adopted without compliance with applicable rulemaking procedures, nor do they contend that the rule violates the constitution. Furthermore, petitioners concede, and we agree, that the director had the authority to promulgate the challenged rule.[1]

---

[1] ORS 656.726 provides, in part:

"(4) The director hereby is charged with duties of administration, regulation and enforcement * * *. To that end the director may:

"(a) Make and declare all rules and issue orders which are reasonably required in the performance of the director's duties."

Similarly, ORS 656.260(19) provides that "[t]he director shall conduct such * * * administrative oversight in regard to managed care as the director deems necessary to carry out the purposes of this chapter."

Petitioner's only contention is that the adopted rule is *ultra vires* because it conflicts with the statutory mandates that require MCOs to provide "quality continuity, and other treatment standards," ORS 656.260(4)(a), and to provide "adequate methods of * * * quality assurance * * * to ensure appropriate treatment or to prevent inappropriate * * * treatment, to exclude from participation in the plan * * * individuals who violate these treatment standards * * *." ORS 656.260(4)(d).

ORS 656.260 explains how health care providers may become "certified" to provide managed care as an MCO. ORS 656.260(1) provides, in part:

> "Any health care provider or group of medical service providers may make written application to the Director of the Department of Consumer and Business Services to become certified to provide managed care to injured workers for injuries and diseases compensable under this chapter."

ORS 656.260(5) explains that health care providers seeking to provide managed care must submit a plan that complies with statutory specifications; otherwise the director shall refuse, or may revoke or suspend, certification. ORS 656.260(5) provides, in part:

> "The director shall refuse to certify or may revoke or suspend the certification of any health care provider or group of medical service providers to provide managed care if the director finds that:
>
> "(a)  The plan for providing medical or health care services fails to meet the requirements of this section.
>
> "(b)  Service under the plan is not being provided in accordance with the terms of a certified plan."

Pursuant to ORS 656.260(4),

> "[t]he director *shall* certify a health care provider or group of medical service providers to provide managed care under a plan if the director finds that the plan:
>
> "(a)  Proposes to provide services that meet quality, continuity and other treatment standards prescribed by the

director and will provide all medical and health care services that may be required by this chapter in a manner that is timely, effective and convenient for the worker.

"* * * * *

"(g)   Authorizes workers to receive compensable medical treatment from a *primary care physician* who is *not a member of the managed care organization,* but * * * with whom the worker has a documented history of treatment, *if that primary care physician agrees * * * to comply with all the rules, terms and conditions regarding services performed by the managed care organization.* Nothing in this paragraph is intended to limit the worker's right to change primary care physicians prior to the filing of a workers' compensation claim."

(Emphasis added.)

As petitioners contend, OAR 436-015-0070(2) prohibits MCOs from considering a PCP's past practices when deciding whether to authorize a PCP to treat an injured worker. Petitioners argue that, to be authorized under ORS 656.260(4)(g), a PCP merely needs to agree "to comply with all the rules, terms and conditions regarding services performed by the managed care organization." Petitioners contend that a "parade of horribles" will result if OAR 436-015-0070(2) is applied literally to preclude an MCO from *ever* denying authorization of a PCP because of the PCP's "past practices." For example, petitioners point out that, under OAR 436-015-0070(2), a PCP previously removed from an MCO for improper behavior (*e.g.,* sexual abuse of a patient) who subsequently agrees once more "to comply with all the rules, terms and conditions" *must* be allowed to continue providing treatment. At oral argument, petitioners hypothesized that the rule could therefore allow for a "revolving door," whereby unprofessional PCPs continually violate the MCO's procedures but must be immediately reinstated by simply agreeing once more to comply.

Petitioners also argue that OAR 436-015-0070(2) "exceeds or contravenes specific, clearly expressed statutory policies and mandates" because, pursuant to ORS 656.260(4)(a), the MCO must formulate a plan that "proposes to provide services that meet *quality, continuity and other*

*treatment standards* prescribed by the director * * *."
(Emphasis added.) Additionally, petitioners argue that ORS
656.260(4) requires that the director

> "certify a health care provider or group of * * * providers to
> provide managed care under a plan if the director finds that
> the plan:

> "* * * * *

> "(d)   Provides *adequate methods of * * * quality assur-
> ance * * * to ensure appropriate treatment or to prevent
> inappropriate or excessive treatment, to exclude from partic-
> ipation in the plan those individuals who violate these treat-
> ment standards * * *."

(Emphasis added.) Petitioners contend that MCOs cannot
meet "quality, continuity and other treatment standards"
and "exclude from participation" nonmember PCPs who have
violated treatment standards, while at the same time allow-
ing PCPs who have violated those treatment standards in
the past to treat injured workers by agreeing to comply with
the same treatment standards that those PCPs previously
violated. Petitioners cite *Cook v. Workers' Compensation
Department*, 306 Or 134, 138, 758 P2d 854 (1988), where the
court noted that, "[a]lthough the department has the author-
ity to interpret the statutory terms * * * that interpretation
must be consistent with the policy underlying the legislative
enactment. An administrative agency may not, by its rules,
amend, alter, enlarge or limit the terms of a statute." *Id.* Peti-
tioners contend that the director amended or altered ORS
656.260.

     The Department of Consumer Business Services
(the director) makes two arguments in response to petition-
ers' rule challenge. First, the director contends that OAR
436-015-0070(2) is consistent with the worker-friendly policy
underlying ORS 656.260(4)(g), *viz.*, that the worker is
afforded maximum freedom in maintaining preexisting rela-
tionships with health care providers. In addition, the director
argues that, although MCOs are charged with providing
quality care, they must also concern themselves with patient
choice and, if those two policies conflict, patient choice should

take precedence. The director's second argument is that non-member PCPs never *participate* in the plan, so OAR 436-015-0070(2) is consistent with ORS 656.260(4)(d), which states that an MCO plan must *"exclude from participation* in the plan those individuals who violate these treatment standards * * *."* (Emphasis added.) We begin with the director's first argument.

■■ The relevant statutes, set out previously, require MCOs to provide quality care while allowing a worker to be treated by a nonmember PCP who agrees to comply with the MCO's rules, terms and conditions. "[W]henever possible the court should construe together statutes on the same subject as consistent with and in harmony with each other." *Davis v. Wasco IED*, 286 Or 261, 272, 593 P2d 1152 (1979). Furthermore, "statutes dealing with the same subject matter must be read together and harmonized to the extent possible." *Newton v. Bank of the West*, 183 Or App 347, 351, 51 P3d 1281 (2002).

ORS 656.260 was drafted primarily by the Governor's 1990 Workers' Compensation Labor Management Advisory Committee. The committee was formed by then-governor Neil Goldschmidt and its purpose was to provide a solution to the growing costs of the state workers' compensation program. Report from The Governor's Workers' Compensation Labor Management Advisory Committee, letter to Governor Neil Goldschmidt, May 1, 1990. The committee formulated a legislative proposal, which became Senate Bill (SB) 1197 (1990). Section 12 of SB 1197 eventually became ORS 656.260.

In its report, the committee addressed the issue of whether an injured worker would be required to receive treatment solely from MCO providers. The report stated:

> "Concern was expressed during the meeting with the House and Senate minority caucus that *an individual who is under the care of a primary care physician shouldn't be forced to accept a managed care organization medical provider* upon referral for a potentially life threatening surgical procedure.

> "The committee shared the concern expressed, particularly in situations similar to that given in the example, but noted

that *the director is given authority * * * to propose any rule necessary to provide quality health care to injured workers.* It is the Committee's belief that *the director would have the authority to develop rules to address such situations* and, further, had the authority to refuse to certify, revoke or suspend the certification of any managed care plan failing to meet the requirements of any rules proposed under authority of the Act."

Report from The Governor's Workers' Compensation Labor Management Advisory Committee, May 3, 1990 (emphasis added). This excerpt indicates that patient choice and quality of care are intertwined and that the director could propose rules, such as OAR 436-015-0070(2), that would ensure patient choice and therefore quality of care to injured workers. Although this statement refers to an instance involving emergency medical treatment, it provides insight into the way that the drafters intended quality of care and patient choice to intersect. In other words, when the drafters were talking about patient choice, they were necessarily referring to quality care. The above-quoted statement further indicates that the intent of the legislation was to give broad authority to the director to correct situations where patient choice was restricted. OAR 436-015-0070(2) does exactly what the committee intended: it provides for quality care *because* it allows patients to choose to be treated by their PCPs and keeps MCOs from interfering with that choice based on a PCP's past practices.

Cecil Tibbetts, a member of The Governor's Workers' Compensation Labor Management Advisory Committee, explained that, "[w]e have allowed the people who have a family physician, a trusted physician that they work with, that they don't have to go to the managed care organization. They can go to that family physician." Tape Recording, Special Committee on Workers' Compensation, SB 1197, May 3, 1990, Tape 2, Side A (statement of Cecil Tibbetts).

The committee also discussed quality of care and patient choice in its summary of section 12 of SB 1197:

"The plan must include an adequate number of each class of medical service providers to give the worker flexibility to choose medical service providers from among those individuals who provide service under the plan. Requires that the

MCO provide methods of peer and service utilization review to prevent inappropriate or excessive treatment. The plan must provide for excluding from participation those individuals who violate these treatment standards. * * *

"Workers who elect prior to or at the time of making a claim may receive medical care from their primary care physician * * *. * * * The primary care physician must agree to refer the worker to the managed care organization for any physical therapy or other specialized treatment. The physician also agrees to comply with the rules, terms and conditions regarding medical services performed by the MCO."

Management/Labor Committee Package Agreement, Apr 1990, 4-5. Portions of that statement were codified in ORS 656.260(4)(d), which provides that the MCO plan must include "adequate methods of * * * quality assurance * * * to ensure appropriate treatment or to prevent inappropriate * * * treatment, to *exclude from participation in the plan* * * * individuals who violate these treatment standards * * *." (Emphasis added.)

■     Although we have not yet completed our analysis of the director's first argument, the second argument regarding PCP "participation" is relevant at this point in the analysis, given the committee's summary of section 12. The director's second argument is that it does not conflict with ORS 656.260(4)(d) because PCPs do not "participate" in the MCO plan.

Petitioners contend that the term "plan," as it is used in the statutes, "refers more generically to the proposed structure and operational guidelines by which the MCO will comply with *all* of the criteria for Department certification." (Emphasis in original.) Petitioners acknowledge that participants in the plan include MCO members who enter into contracts with the MCO. However, petitioners argue that

"such plans must *also* include within themselves provision[s] for 'participation' by non-panel providers, *i.e.* preexisting PCPs who agree to abide by the same 'terms and conditions * * *.' All of the care provided by an MCO is provided pursuant to its 'plan' * * *. That includes the mandate to police and enforce its managed care procedures and standards for all such care by excluding non-complaint 'participants' * * *."

(Emphasis in original.) Petitioners contend, therefore, that "[t]he Department's interpretation of nonpanel PCP care as something that is in the plan, but not of the plan, is untenable."

■ To determine whether nonmember PCPs "participate" in the MCO plan, we must interpret the statute. We must, therefore, analyze the text and context of the relevant statutes and rules according to *PGE v. Bureau of Labor and Industries*, 317 Or 606, 611, 859 P2d 1143 (1993).[2]

ORS 656.260(4)(d)(E) provides that "the managed care organization monitors and enforces its *contracts* with *participating providers* * * *." (Emphasis added.) Similarly, OAR 436-015-0030(5)(a) provides that the MCO shall provide "[c]opies of *contract agreement(s) or other documents signed by the MCO and each participating medical service provider/ health care provider representative* which *verify membership*[.]" (Emphasis added.) Finally, ORS 656.260(4)(g) provides that the director shall certify an MCO that provides care under a plan that allows workers to receive treatment "from a primary care physician *who is not a member* of the managed care organization * * *." (Emphasis added.)

The director argues, and we agree, that, unlike nonparticipant nonmember PCPs, medical service providers who are *members of*, and *participate in*, the MCO plan are participants because *participants verify their membership* in the MCO by *entering into contracts* with the MCO. The difficulty with petitioners' argument is that, although the plan must *provide for* nonmember PCPs, that does not mean that nonmember PCPs *participate in* the plan. The PCPs at issue here are not members and do not enter into contracts with the MCOs; thus, those PCPs do not participate in the plan.

■ Assuming *arguendo* that nonmember PCPs do participate in the MCO plan, we would still hold that the contested rule is consistent with ORS 656.260(4)(d), which provides that MCOs must "exclude from participation in the plan * * * individuals who *violate* these treatment standards

---

[2] "In interpreting administrative rules, we apply the same principles of interpretation that are used to construe statutes. Thus, we first examine the text and context of the applicable rules." *Haskins v. Palmateer*, 186 Or App 159, 166, 63 P3d 31 (2003), *rev den*, 335 Or 510 (2003) (citations omitted).

* * *." (Emphasis added.) ORS 656.260(4)(d) uses the present tense of the verb "violate." The statute does not say that individuals who "*have violated*" the treatment standards must be excluded. OAR 436-015-0070 comports with ORS 656.260(4)(d) because the rule requires the PCP to "[a]gree to comply with all terms and conditions regarding services governed by the MCO," and it requires the MCO to refrain from refusing to authorize a PCP on the basis of *past* practices. "The use of a particular verb tense in a statute can be a significant indicator of the legislature's intention." *Martin v. City of Albany*, 320 Or 175, 181, 880 P2d 926 (1994). Therefore, even if we concluded that nonmember PCPs participated in the MCO plan, we would hold that OAR 436-015-0070 is consistent with ORS 656.260(4)(d) because ORS 656.260(4)(d) is worded in such a way that it can refer only to exclusions for conduct.

In sum, we agree with the director that nonmember PCPs are not participants in MCO plans. Therefore, there is no conflict between the requirement that MCOs "exclude from participation in the plan those individuals who violate these treatment standards" and the requirement that MCOs authorize an injured worker to receive treatment from a PCP, regardless of that PCP's past practices.

Turning back to the director's first argument that the contested rule is consistent with the statutory mandates that require MCOs to provide quality care, we continue our analysis of legislative history. Tibbetts further addressed quality of care and patient choice when he responded to questions from legislators regarding whether injured workers could obtain treatment from chiropractors:

"[J]ust based on my own relationship with my family physician, if I go to a chiropractor—in fact, I've done this before—and the chiropractor's helping me, and then I go back to my family physician and say 'I want to be referred back to this guy because he's helping me,' my family physician is going to do that. I have a relationship with him and I trust him or I wouldn't be there. On the other hand, the employee that says, 'I'll go to the managed care organization,' the chiropractors are going to be inside that system * * *. So if you go on that track, you're not going to have a

problem with the attending physician; if you go on the other track and say 'I don't trust the managed care system, I want to go to my family physician,' then my feeling about that, very strongly, is your relationship with your family physician. I mean, I'm not going to have a family physician who doesn't like chiropractors if I think a chiropractor's important to me. The choice of my family physician is going to be a person who understands the value of chiropractors * * *. We're not trying to cut them out of the system. So we have two tracks that you can go on and our opinion, in both tracks, [is that] you are going to be able to obtain this care if you need it."

Tape Recording, Special Committee on Workers' Compensation, SB 1197, May 3, 1990, Tape 2, Side A (statement of Cecil Tibbetts).

Ed Redman, also a member of the committee, emphasized patient choice:

"If you have a family physician that you have been going to for whatever treatment and you become injured on the job, * * * you can continue going to that family physician for your on the job injury and you can change family physicians. You don't have to stay with that same one forever if you wish to change family physicians for whatever reason — if you move or anything—any other reason—the physician moves—you have the authority to change family physicians as often as you wish to. So we're not stating that you have to be with this physician for many years. It's just that you have established some type of patient-physician relationship with that individual and that individual then is your attending physician."

*Id.* (statement of Ed Redman).

In response to concerns raised by a legislator regarding how long a patient must be treated by a physician in order for that physician to qualify as the patient's PCP, Tibbetts explained:

"We have, in the act, provided that you can't change physicians during [the] pendency of a claim. So we aren't providing doctor shopping in that situation, but we are trying to provide the maximum freedom of choice and we're balancing the need for control with the need for freedom of choice."

*Id.* (statement of Cecil Tibbetts). Petitioners contend that that statement supports their argument that the contested rule reflects "no concern at all for 'balancing.' " The context of Tibbetts's statement, however, does not support petitioners' argument that patient choice must be balanced with MCO control. Rather, Tibbetts was speaking about striking a balance between a patient's need to change PCPs and the requirement that a patient may not change physicians during the pendency of a claim.

The legislative history reflects the intent to intertwine quality of care with patient choice and the view that one facet of ensuring quality care involves allowing patients to receive treatment from PCPs. Furthermore, it is clear that the director is charged with promulgating rules that further the legislative intent to provide quality of care by ensuring that patients' freedom of choice is not impaired. The policy behind OAR 436-015-0070(2) was explained in the Department of Consumer and Business Services Workers' Compensation Division Bulletin No. 319 (rev) issued on August 18, 2000. The bulletin states that its purpose

> "is to clarify public policies regarding MCOs' reliance on PCPs' past practices *as a basis to deny authorization for PCPs to provide ongoing medical services to enrolled workers.* Because the workers' compensation law does not provide for denial of authorization for past practices, the director has determined that such denial is not appropriate."

(Emphasis added.) OAR 436-015-0070(2) was thus promulgated to provide quality health care to injured workers by ensuring that MCOs could no longer rely on PCPs' past practices as a basis to deny patient choice.

We thus conclude that OAR 436-015-0070(2) does not conflict with the statutory mandates directing MCOs to provide quality care and "exclude from participation in the plan * * * individuals who violate these treatment standards * * *." ORS 656.260(4)(d). This is particularly evident after examining the Report from The Governor's Workers' Compensation Labor Management Advisory Committee in which the committee explained that the purpose of giving the director authority "to propose any rule necessary to provide quality health care to injured workers" is to avoid a situation

where a worker under the care of a PCP is forced to receive treatment from an MCO. Furthermore, nonmember PCPs do not participate in the MCO plan, so the contested rule is consistent with ORS 656.260(4)(d), which states that an MCO plan must *"exclude from participation* in the plan" those "individuals who violate these treatment standards." In the alternative, we find that the statute is prospective because it uses the present tense verb "violate." Thus, even if PCPs are participants in the MCO plan, prohibiting MCOs from denying authorization of a PCP based on *past* practices is consistent with legislative intent.

OAR 436-015-0070(2) held valid.