Argued and submitted September 13, 2004, the decision of the Court of Appeals is affirmed, and former OAR 436-015-0070(2) (2002) is upheld February 17, 2005

MANAGED HEALTHCARE NORTHWEST, INC.,
and Providence Health Plan, Inc.,
*Petitioners on Review,*

*v.*

DEPARTMENT OF CONSUMER
AND BUSINESS SERVICES,
*Respondent on Review.*

(Agency No. 02053; CA A117587; SC S51006)

106 P3d 624

Jerald P. Keene, Reinisch, Mackenzie, Healey, Wilson & Clark, Portland, argued the cause and filed the brief for petitioners on review.

Judy C. Lucas, Assistant Attorney General, Salem, argued the cause and filed the brief for respondent on review. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

RIGGS, J.

## RIGGS, J.

Petitioners on review are two managed health care organizations (MCOs), Managed Healthcare Northwest, Inc., and Providence Health Plan, Inc. (collectively "Managed Healthcare"). They challenge a Department of Consumer and Business Services (DCBS) administrative rule that prohibits MCOs from using "past practices" as a basis for denying authorization of nonmember primary care physicians (PCPs) to treat subject workers.[1] Managed Healthcare argues only that DCBS exceeded or contravened ORS 656.260 (set out below) in adopting the rule. *See* ORS 183.400(4)(b) (court shall invalidate rule that "[e]xceeds the statutory authority of the agency"). The Court of Appeals rejected Managed Healthcare's argument. *Managed Healthcare Northwest v. DCBS*, 189 Or App 444, 75 P3d 912 (2003). We allowed review and now affirm.

This court recently described MCOs as follows:

"An MCO is a health care group organized and certified as provided in ORS 656.260(1) to (5) 'to provide managed care to injured workers for injuries and diseases compensable under [the workers' compensation statutes].' ORS 656.260(1). The director of the Department of Consumer and Business Services certifies MCOs to provide managed care under a plan. Before certifying a [prospective] MCO's plan, the director must find that certain requirements pertaining to quality of care, nondiscrimination, service costs and utilization, methods of review, and other criteria are met. ORS 656.260(4)."

*Kahn v. Providence Health Plan,* 335 Or 460, 462 n 1, 71 P3d 63 (2003) (brackets in original). When a self-insured employer or the insurer of an employer contracts with a certified MCO to provide medical services under the workers'

---

[1] "Past practices" is an administrative, not a statutory, term for which the rule at issue provides no definition. DCBS argues that " 'past practices' is probably broad enough to cover all aspects of the nonmember PCP's medical practice." Managed Healthcare, in contrast, at least implicitly reads "past practices" more broadly to include any prior conduct of a nonmember PCP that would have breached an agreement between the PCP and MCO, had an agreement been in place. Because our resolution of this facial rule challenge would be the same under either a narrow or a broad construction of "past practices," we do not address that matter further.

compensation statutes, workers receive medical services consistent with the terms of that contract. *See* ORS 656.245(4)(a) (so stating).

As noted above, to qualify for DCBS certification, a prospective MCO must submit a plan that satisfies various statutory criteria, one of which is that the plan

> "[a]uthorizes workers to receive compensable medical treatment from a primary care physician who is not a member of the managed care organization, but who maintains the worker's medical records and with whom the worker has a documented history of treatment, if that primary care physician agrees to refer the worker to the managed care organization for any specialized treatment, including physical therapy, to be furnished by another provider that the worker may require and if that primary care physician agrees to comply with all the rules, terms and conditions regarding services performed by the managed care organization. * * *."

ORS 656.260(4)(g). The rule at issue, which DCBS adopted in 2002 and which pertains to ORS 656.260(4)(g), provides that "[t]he MCO cannot deny authorization of a [nonmember PCP] based on past practices." *Former* OAR 436-015-0070(2) (2002).[2]

■        Managed Healthcare does not challenge DCBS's general authority to adopt the rule at issue. *See* ORS 656.726(4)(a) (providing that DCBS director may "[m]ake and declare all rules and issue orders which are reasonably required in the performance of the director's duties"). Neither does Managed Healthcare contend that DCBS adopted the rule without complying with the applicable rulemaking procedures. Instead, and as noted above, Managed Healthcare argues only that DCBS exceeded its statutory authority by adopting an otherwise valid rule that conflicts with clearly stated statutory policy. *See, e.g., Planned Parenthood Assn. v. Dept. of Human Res.*, 297 Or 562, 573, 687 P2d 785 (1984) (recognizing that basis for challenging administrative rule under ORS 183.400(4)(b)).

---

[2] DCBS since has renumbered and amended the rule to include authorized nurse practitioners. That amendment does not affect our analysis, and, for purposes of this opinion, we will cite to the prior version.

Managed Healthcare relies on several statutory sources as support for its argument that DCBS may not prevent MCOs from declining to authorize treatment by a worker's nonmember PCP based on that PCP's past practices. The first source is the text of ORS 656.260(4)(g) itself, which we quoted above. Managed Healthcare argues that

> "the statutory text explicitly signals an intent [that] the worker['s] 'choice' [of PCP] be respected *subject to* the legislative mandate that such providers agree to comply 'with all terms and conditions regarding services governed by the MCO.' Moreover, if one of an MCO's 'terms and conditions' regarding services precludes approval of care by a PCP who has previously demonstrated a lack of such compliance, then ORS 656.260(4)(g) specifically sanctions an MCO[']s refusal to authorize care by that provider. (In such cases, the provider would be deemed to have 'agreed' he was disqualified.)"

We disagree. The statutory condition upon which Managed Healthcare relies requires only that the nonmember PCP "*agrees to comply* with all the rules, terms and conditions regarding services performed by the [MCO]." ORS 656.260(4)(g) (emphasis added). The legislature used the present tense in describing the PCP's agreement to comply. That choice refutes Managed Healthcare's argument that MCOs may rely upon a PCP's past practices—a retrospective consideration—in making an authorization decision. Managed Healthcare attempts to avoid that conclusion by arguing that previously noncompliant PCPs are "deemed to have agreed" that they are disqualified *if* one of the MCO's terms and conditions is past compliance. That argument is not a plausible reading of the text, because it would nullify the legislature's use of the present tense in the sentence analyzed above.

■ In addressing Managed Healthcare's challenge to *former* OAR 436-015-0070(2), we also must examine the applicable statutory wording in its context to determine the legislature's intent. *See Planned Parenthood Assn.*, 297 Or at 573 ("The question [in determining if a rule exceeds statutory authority] is whether [the rule] corresponds to the statutory policy as we understand it."); *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-11, 859 P2d 1143 (1993) (court

discerns legislative intent first by examining text and context of statute). In that respect, Managed Healthcare contends that the rule contravenes the statutory directive in ORS 656.260(4)(d) that an MCO's plan must

> "[p]rovide[ ] adequate methods of peer review, service utilization review, quality assurance, contract review and dispute resolution to ensure appropriate treatment or to prevent inappropriate or excessive treatment, *to exclude from participation in the plan those individuals who violate these treatment standards* and to provide for the resolution of such medical disputes as the director considers appropriate."

(Emphasis added.) Focusing on the emphasized wording, Managed Healthcare argues that MCOs cannot comply with ORS 656.260(4)(d) without violating *former* OAR 436-015-0070(2). Again, we disagree.

As the Court of Appeals noted, ORS 656.260(4)(d) governs those who "participate in the plan," *i.e.*, providers who have entered into contracts with an MCO to provide services under the managed care plan. *Managed Healthcare Northwest*, 189 Or App at 452-54. The authorization of treatment by nonmember PCPs under ORS 656.260(4)(g), however, constitutes an express exception to the requirement that subject workers receive services only from participating providers. *See id.* (referring to "primary care physician *who is not a member* of the managed care organization") (emphasis added). In other words, ORS 656.260(4)(d) refers to a different healthcare provider population than does ORS 656.260(4)(g) and *former* OAR 436-015-0070(2). Therefore, the rule does not conflict with the statutory directive of ORS 656.260(4)(d).

Finally, Managed Healthcare argues that *former* OAR 436-015-0070(2) contravenes the policy set out in ORS 656.260(4)(c), which requires that a prospective MCO's plan must "[p]rovide[ ] appropriate financial incentives to reduce service costs and utilization without sacrificing the quality of service." Managed Healthcare contends that the rule is at odds with both statutory considerations (*i.e.*, cost reduction and maintenance of quality of service), first by providing a

disincentive for physicians to join MCOs and second by prohibiting MCOs

> "from refusing to authorize PCP status for a provider whose past practices might well include patient abuse, disciplinary sanctions short of de-licensing, past malpractice judgments or just plain bad medical practices."

With respect to financial incentives, we see nothing about the administrative determination that MCOs may not consider a nonmember PCP's past practices that would provide a disincentive for practitioners to join MCOs. The legislature has decided to require MCOs to compensate treatment provided to workers by nonmember PCPs subject to the conditions set out in ORS 656.260(4)(g). Managed Healthcare's disagreement in that respect is with the policy choice that the Legislative Assembly has made, not with DCBS.

For similar reasons, we disagree that *former* OAR 436-015-0070(2) conflicts with the requirement that an MCO's plan ensure the quality of care that a worker receives. We must examine that requirement in ORS 656.260(4)(c) in its context. That context includes paragraph (4)(g), which we have determined expresses a clear legislative determination that a worker is permitted to continue receiving care from a nonmember PCP if that physician agrees to follow the MCO's rules, terms, and conditions. Reading those two statutory provisions together, as we must, it is clear that an MCO cannot use the *general* requirement in paragraph (4)(c), to provide "appropriate" financial incentives and ensure quality of care, to undermine the legislature's *specific* determination in paragraph (4)(g) that allows a worker to receive compensable treatment from a nonmember PCP.

The decision of the Court of Appeals is affirmed, and *former* OAR 436-015-0070(2) (2002) is upheld.