Argued and submitted October 13, 2015, OAR 137-020-0150(1)(b) held valid
April 12, petition for review denied August 3, 2017 (361 Or 800)

# BP WEST COAST PRODUCTS, LLP,
*Petitioner,*

*v.*

# OREGON DEPARTMENT OF JUSTICE,
*Respondent.*

## A156902

396 P3d 244

William F. Gary argued the cause for petitioner. With him on the briefs were Sharon A. Rudnick and Harrang Long Gary Rudnick P.C.

Peenesh H. Shah, Assistant Attorney General, argued the cause for respondent. With him on the brief were Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Denise G. Fjordbeck, Assistant Attorney General.

Scott A. Shorr, Joshua L. Ross, and Stoll Stoll Berne Lokting & Shlachter P.C. filed the brief *amicus curiae* for Steven Scharfstein.

Before Sercombe, Presiding Judge, and Hadlock, Chief Judge, and Tookey, Judge.*

_____

* Hadlock, C. J., *vice* Nakamoto, J. pro tempore.

## TOOKEY, J.

BP West Coast Products, LLP (BP) challenges the validity of OAR 137-020-0150, a rule adopted by the Attorney General, which pertains to a service station's posting of gas prices on signs visible from the street and dispensing devices. BP argues that "[t]he Administrative Rule's definition of 'condition' and all portions of the Rule that incorporate or rely on the definition of 'condition' are invalid because they exceed the authority of the Attorney General to adopt." We disagree; ORS 646.930 establishes the minimum requirements for a service station's posting of fuel prices, and it does not prohibit the Attorney General from adopting rules under ORS 646.608(1)(u) to identify and prohibit "any other unfair or deceptive conduct" concerning the display of fuel prices. Accordingly, we conclude that OAR 137-020-0150(1)(b) is valid.

ORS 646.930 establishes the statutory requirements that a service station must meet if it has a fuel price sign that is visible from the street. Subsection (1)(a) provides that a person operating a "service station, business, or other place for the purpose of retailing and delivering gasoline, diesel or other fuel" may "display on a sign visible from the street the lowest cash prices charged for the sale of the lowest grades of gasoline, diesel or other fuel." Subsection (2)(b) provides that, if "a cash price displayed on a sign is available only under some conditions, the sign and the dispensing device must clearly state the conditions."

With that statutory framework in mind, we turn to the challenged rule provision, OAR 137-020-0150(1)(b). The definition of "condition" was added when the rule was revised in 2010. OAR 137-020-0150(1)(b) defines "condition" as "any payment method (e.g., credit), service level (e.g., full service or mini service), or any other modifying circumstance affecting the price per unit of measurement of motor vehicle fuel from the lowest cash price[.]"

Our review of OAR 137-020-0150 is governed by ORS 183.400. "Under ORS 183.400(1), 'any person' may petition this court to determine the validity of a rule." *Assn. of Acupuncture v. Bd. of Chiropractic Examiners*, 260 Or App 676, 678, 320 P3d 575 (2014). However, "[i]n reviewing

a rule challenge under that statute, we may declare the rule invalid only if we conclude that it violates constitutional provisions, exceeds the statutory authority of the agency that adopted the rule, or was adopted without complying with rulemaking procedures." *Id.* Under ORS 183.400(4)(b), our determination of whether OAR 137-020-0150(1)(b) exceeds the statutory authority of the Attorney General to adopt the rule "is limited to a determination of whether the rule, as written, is valid[.]" *GTE Northwest, Inc. v. Public Utility Commission*, 321 Or 458, 464, 900 P2d 495 (1995), *cert den*, 517 US 1155 (1996). BP's facial challenge to OAR 137-020-0150(1)(b) fits within the prescribed scope of our review.[1]

We agree with the parties that the term "conditions," as used in ORS 646.930(2)(b), is an inexact term. *See Nulph v. Board of Parole*, 279 Or App 652, 657-58, 381 P3d 948 (2016), *rev allowed*, 360 Or 851 (2017) (discussing the three categories of statutory terms). Because "conditions" is an inexact term, we examine the statute to determine what the legislature intended by using the term "conditions." *See Springfield Education Assn. v. School Dist.*, 290 Or 217, 223, 621 P2d 547 (1980) ("Inexact terms *** require agency interpretation and judicial review for consistency with legislative policy."). "If the agency interpretation is embodied in a rule, and the rule is otherwise lawful, the rule will be upheld on judicial review *** if the interpretation can be determined to be within the statutory intent[.]" *Id.* at 228 (citing ORS 183.400(4)(b)).[2]

As noted, BP argues that the definition of "condition" and all portions of OAR 137-020-0150 that incorporate the definition of "condition" are invalid under ORS 183.400(4)(b) because the definition of "condition" under OAR 137-020-0150(1)(b) exceeds the Attorney General's rulemaking authority. BP notes that "the legislature expressly delegated

[1] We note that BP has made an as-applied challenge to OAR 137-020-0150 in a separate case, *Steven Scharfstein v. BP West Coast Products, LLC*, A162289. In this case, we only address the facial validity of OAR 137-020-0150.

[2] BP does not challenge the Attorney General's "jurisdiction" to adopt or revise OAR 137-020-0150(1)(b) under Oregon Laws 1985, chapter 751, section 2 or ORS 646.608(1)(u), or assert that the Attorney General failed to follow the required rulemaking procedures. *See Planned Parenthood Assn. v. Dept. of Human Res.*, 297 Or 562, 565, 687 P2d 785 (1984) (discussing the correct sequence for analyzing a challenge under ORS 183.400).

to the Attorney General the limited authority to adopt rules 'to aid in the implementation'" of ORS 646.930 under Oregon Laws 1985, chapter 751, section 2, and, as a result, "the Attorney General's rulemaking authority under ORS 646.930 is limited to the adoption of rules that are consistent with the legislative policy expressed in the statute." The crux of BP's argument is that ORS 646.930 prohibits the Attorney General from adopting a rule that defines "conditions" in a way that could require "the display of conditions that *increase* the lowest cash price rather than conditions *to obtaining* the lowest cash price." *See Garrison v. Dept. of Rev.*, 345 Or 544, 548-49, 200 P3d 126 (2008) ("[A] rule created within a statutory scheme cannot amend, alter, enlarge upon, or limit statutory wording so that it has the effect of undermining the legislative intent.").

The Attorney General contends that the legislature has given the Attorney General the authority under ORS 646.608(1)(u) to adopt rules so that the Attorney General can protect consumers and effectively implement ORS 646.930. In the Attorney General's view, "ORS 646.930, as amended, is not a legislative blessing allowing gasoline retailers to provide misleading information to consumers; [and OAR 137-020-0150] is fully consistent with its actual legislative purposes, as revealed by the text, context, and legislative history."

We begin by identifying the legal framework established by OAR 137-020-0150(1)(b). Again, paragraph (b) of subsection (1) defines "condition" as "any payment method (e.g., credit), service level (e.g., full service or mini service), or any other modifying circumstance affecting the price per unit of measurement of motor vehicle fuel from the lowest cash price[.]" Thus, the revised rule, OAR 137-020-0150(1)(b), establishes the parameters for a "condition" as any modifying circumstance affecting the lowest cash price.

OAR 137-020-0150(3)(d)(A), in turn, requires the disclosure of any condition affecting the price. The pertinent text of that rule provides that, "[i]f the lowest cash prices are available only under some conditions[, t]he retailer must clearly and conspicuously display all conditions on each street sign, price sign and dispensing device (e.g., cash only,

mini serve)." OAR 137-020-0150(3)(d)(A). Under OAR 137-020-0150(3)(d)(A), the Attorney General's use of the term "condition" requires a service station to display any modifying circumstance affecting the price per unit of motor vehicle fuel from the lowest cash price. Thus, we must examine the statutes that the Attorney General is implementing to determine whether the legislature intended to prohibit the Attorney General from adopting rules that require the display of such modifying circumstances that affect the price per unit from the lowest cash price.

OAR 137-020-0150 pertains to the display of fuel signs and, as the parties note, was adopted pursuant to Oregon Laws 1985, chapter 751, section 2,[3] and ORS 646.608(1)(u). We apply the principles set forth in *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993), and *State v. Gaines*, 346 Or 160, 171-73, 206 P3d 1042 (2009) to determine whether OAR 137-020-0150 "coincides with the legislative policy" of the enabling statutes. *Springfield Education Assn.*, 290 Or at 228; *see Nay v. Dept. of Human Services*, 360 Or 668, 681, 385 P3d 1001 (2016) (ORS 183.400(4)(b) requires examining whether the rule "corresponds to the statutory policy" (internal quotation marks and citation omitted)).

In light of the text, context, and legislative history discussed below, we decline to imply the limitation BP suggests. Instead, we conclude that ORS 646.930 establishes the minimum requirements for a service station's posting of fuel prices, and it does not prohibit the Attorney General from adopting rules under ORS 646.608(1)(u) to identify and prohibit "any other unfair or deceptive conduct" concerning the display of fuel prices. *See* ORS 646.608(4) ("An action or suit may not be brought under subsection (1)(u) of [ORS 646.608] unless the Attorney General has first established a rule * * * declaring the conduct to be unfair or deceptive in trade or commerce.").

We start with the statutory text of ORS 646.930 because it is "the best evidence of the legislature's intent."

---

[3] Oregon Laws 1985, chapter 751, section 2, required the Attorney General to adopt rules to aid in the implementation of *former* ORS 646.875, *renumbered as* ORS 646.930 (1985).

*PGE*, 317 Or at 610. ORS 646.930 establishes requirements related to the posting of fuel price signs at a service station. ORS 646.930(1)(a) provides that a person operating a "service station, business, or other place for the purpose of retailing and delivering gasoline, diesel or other fuel" may "display on a sign visible from the street the lowest cash prices charged for the sale of the lowest grades of gasoline, diesel or other fuel." Under ORS 646.930(2)(b), if "a cash price displayed on a sign is available only under some conditions, the sign and the dispensing device must clearly state the conditions." The legislature did not define the term "conditions."

The plain, ordinary meaning of the noun "condition" is:

> "**1 a :** something established or agreed upon as a requisite to the doing or taking effect of something else : STIPULATION *** **2 :** something that exists as an occasion of something else : a circumstance that is essential to the appearance or occurrence of something else : PREREQUISITE *** **3 a :** something that limits or modifies the existence or character of something else : a restriction or qualification[.]"

*Websters Third New Int'l Dictionary* 473 (unabridged ed 1993) (capitalization and boldface in original); *see Gaines*, 346 Or at 175 (using dictionary definitions to discern the plain, natural, and ordinary meaning of terms). The rule's definition of condition, as a "modifying circumstance affecting the price," and the dictionary definition of condition, as "something that limits or modifies" the price, are, in essence, identical. *See Gaines*, 346 Or at 175 (we presume that the legislature intended a term to have its plain, natural, and ordinary meaning).

We turn to the text of the term "conditions" in its context to examine "whether the rule corresponds to the statutory policy" of ORS 646.930. *Nay*, 360 Or at 681 (internal quotation marks and citation omitted). ORS 646.930(2)(b) provides that, if "a cash price *** is available only under some conditions," the service station's street sign "must clearly state the conditions." The phrases "available only under some conditions" and "must clearly state the conditions" both refer to the displayed "price." The text of ORS

646.930(2)(b) in its immediate context indicates that the statutory policy is to protect consumers from deceptive fuel pricing by requiring the disclosure of additional information, *i.e.*, the "conditions."

The broader statutory scheme also furthers the policy of protecting consumers by requiring the disclosure of additional information. *See Morsman v. City of Madras*, 203 Or App 546, 561-62, 126 P3d 6, *rev den*, 340 Or 483 (2006) (examining other provisions in the same chapter in which the provision at issue was codified to provide context). ORS chapter 646 governs trade practices and antitrust regulation. ORS 646.905 through 646.963 pertain to trade practices involving vehicle fuels. For example, ORS 646.915 protects consumers by requiring a "clear and conspicuous" disclosure at the dispensing device that the gasoline is "blended with ethanol, methanol, co-solvent, alcohol or other oxygenates." ORS 646.932 requires a service station to post the amount of tax per gallon of gasoline "in a manner visible to consumers." ORS 646.949 requires service stations to "display on a sign on each side of the dispensing device * * * the octane rating of the gasoline being dispensed from that device" in a manner that "will adequately inform the purchaser of the octane rating of gasoline."

The legislative history of ORS 646.930 also reveals that, since the law was enacted, the legislative policy has been to protect consumers from deceptive fuel pricing by requiring the disclosure of information. In 1981, during the hearings on House Bill (HB) 2890 (1981), which enacted the provisions that were subsequently codified at ORS 646.875, there was discussion about the discrepancies between street signs indicating a gallon or liter price and the price per unit charged at the pumps. Tape Recording, House Committee on Business and Consumer Affairs, HB 2890, May 25, 1981, Tape 127, Side A (statements of Rep Fred Parkinson, Rep Gratten Kerans, and Mr. Wayne Bowlby); Tape Recording, House Committee on Business and Consumer Affairs, HB 2890, May 25, 1981, Tape 128, Side A (statements of Rep Jeanette Hamby, Rep Max Rijken, and Rep Bill Markham).

To address the problem of the discrepancy in the price per unit advertised on street signs and the price per

unit paid at the pump, HB 2890, which was enacted and then codified as ORS 646.875 (1981), provided, in pertinent part:

> "(1)  A person who operates a service station, business or other place for the purpose of retailing and delivering gasoline, diesel or other fuel into the tanks of motor vehicles must display the prices charged for the sale of gasoline, diesel or other fuel in compliance with this section. To be in compliance with this section, if there is a sign displayed, the display must:
>
> "(a)  Show the price per unit of measurement and the unit of measurement at which the person sells the fuel; and
>
> "(b)  Show the same price per unit and the unit on any sign as that indicated on any dispensing device used for delivering the fuel into the tanks of motor vehicles."

In 1985, ORS 646.875 was amended and then renumbered as ORS 646.930. Or Laws 1985, ch 751, § 1. Oregon Laws 1985, chapter 751, section 2, required the Attorney General to "adopt rules to aid in the implementation of ORS 646.875." As explained below, the other statutory authority, ORS 646.608, permits the Attorney General to adopt administrative rules prohibiting conduct that constitutes unfair or deceptive conduct in trade or commerce.

The 1985 amendments to ORS 646.875 were set forth in House Bill (HB) 2286 (1985), which was introduced to remedy the pricing inconsistencies that arose from different types of fuel, payment systems, and service levels. Representative Bob Shiprack testified that the intent of the bill was to protect consumers from the "deceptive and often times fraudulent posting of prices for gasoline on the street." Tape Recording, House Committee on Consumer and Business Affairs, HB 2286, Mar 19, 1985, Tape 75 (statement of Rep Shiprack). As an example, in the committee hearing, Representative Shiprack provided an *Oregonian* article with his testimony to illustrate some of the "bait-and-switch methods," *id.*, that HB 2286 was meant to address:

> "In using 'differential prices,' stations charge their customers less under certain conditions—if they pay in cash rather than by credit card, or if they fill their tank rather than buy just a few gallons, for example.

"Most stations charge only slight differences in the prices, but problems can come up because *the signs outside many service stations advertise only their discounted prices, and not the higher rates many customers will have to pay.*"

Exhibit B, House Committee on Consumer and Business Affairs, HB 2286, Mar 19, 1985 (accompanying testimony of Rep Shiprack) (John Snell and Holly Danks, *Driver's Put Cut-rate Tiger in Tank; Get Bit*, Oregonian, Mar 14, 1984 (emphasis added)).

At a hearing on HB 2286 before the Senate Business, Housing, and Finance Committee, Jan Margosian testified on behalf of the Oregon Attorney General and submitted written testimony provided by Assistant Attorney General Tim Wood. Margosian explained how "the Financial Fraud Section of the Attorney General's office has regularly received complaints from Oregon consumers alleging deceptive pricing of motor vehicle fuel." Exhibit D, Senate Business, Housing, and Finance Committee, HB 2286, June 4, 1985 (accompanying statement of Jan Margosian). To provide examples of such complaints, Assistant Attorney General Tim Wood had attached written complaints that had been submitted to the Attorney General's office by consumers. *Id.*

On April 26, 1985, James Bacon submitted a complaint to the Financial Fraud Section of the Attorney General's office. *Id.* In that complaint, Bacon described how there was "a large sign at the curb quoting unleaded gas at $1.11," but that he was "charged $1.304 per gallon" at the pump. *Id.* When Bacon "questioned that price in view of the price posted at the curb[, he] was told by a second attendant that the price on the pump was the credit card price." *Id.* He ended his complaint, stating that "[t]he whole concept of this operation is a huge over charge of a credit card user * * * who do[es]n't know what price is being charged at the pump." *Id.* Charging a consumer more than the displayed price if a consumer uses a credit card is an example of a modifying circumstance that affects the availability of the lowest cash price. *See Springfield Education Assn.*, 290 Or at 226 ("In some cases, legislative history will reveal that certain situations were expressly considered and intended to be included or excluded.").

To address such fuel pricing discrepancies discussed at the 1985 hearings, the legislature enacted HB 2286, which amended ORS 646.875. The amendments included the following pertinent provision set forth below in italics:

"(1)   A person who operates a service station, business or other place for the purpose of retailing and delivering gasoline, diesel or other fuel into the tanks of motor vehicles may display on a sign visible from the street the lowest cash prices charged for the sale of all grades of gasoline, diesel or other fuel.

"(2)   The following apply to a sign displaying prices under this section:

"* * * * *

"(b)   *If a cash price displayed on a sign is available only under some conditions, the sign and the dispensing device must clearly state the conditions.*"

Or Laws 1985, ch 751, § 1 (emphasis added).

The 2010 amendments by the Legislative Assembly to ORS 646.930 did not alter any of the signage requirements regarding the display of conditions set forth in ORS 646.930(2)(b). Or Laws 2010, ch 19, § 1. The 2010 amendments removed the requirement in ORS 646.930(1) that a sign display the lowest cash prices for all grades of fuel, and instead provided that a sign may display only the lowest cash price for the lowest grades of fuel. *Id.* As amended in 2010, ORS 646.930(1)(a) provides:

"A person who operates a service station, business or other place for the purpose of retailing and delivering gasoline, diesel or other fuel into the tanks of motor vehicles:

"(a)   May display on a sign visible from the street the lowest cash prices charged for the sale of the *lowest grades* of gasoline, diesel or other fuel."

(Emphasis added.)

The legislative history indicates that the purpose of the 2010 amendments to ORS 646.930 was to address the expected proliferation of alternative fuels in regard to the requirement that service stations display the lowest

cash prices charged for the sale of all grades of fuel. Staff Measure Summary, House Bill (HB) 3677 A (2010), House Committee on Transportation (Feb 5, 2010);[4] *see State Treasurer v. Marsh & McLennan Companies, Inc.*, 353 Or 1, 12-13, 292 P3d 525 (2012) (using staff measure summary to understand the legislature's intent in enacting the statutory terms at issue). The 2010 Staff Measure Summary to HB 3677 A confirms that the legislature intended to protect consumers by enacting "[f]uel station signage requirements * * * during the 1980s to address situations where some fuel stations were placing signs advertising a low but misleading price for fuel on the street [sign] that did not match the higher prices they were charging at the pump."

In sum, the text, context, and legislative history of ORS 646.930 indicate that the primary purpose of ORS 646.930 has been to protect consumers from deceptive fuel pricing by establishing minimum requirements for a service station's posting of fuel prices. Since 1985, the legislature has sought to accomplish that task by requiring the disclosure of "conditions" to ensure that the price displayed on a service station's street sign matches the price a consumer can expect to pay at the pump. The parameters for conditions established by OAR 137-020-0150(1)(b) are entirely consistent with that statutory policy. Furthermore, ORS 646.930 and Oregon Laws 1985, chapter 751, section 2, do not prohibit the Attorney General from adopting rules under ORS 646.608(1)(u) to identify and prohibit "any other unfair or deceptive conduct" concerning the display of fuel prices.

That other statutory grant of rulemaking authority, ORS 646.608(1)(u), reveals that the legislature has granted the Attorney General broad rulemaking authority to protect consumers from "unfair or deceptive conduct." BP contends, and we agree, that the terms "unfair or deceptive conduct" in ORS 646.608(1)(u) are "delegative terms." *Springfield Education Assn.*, 290 Or at 228. With delegative terms, the "discretionary function" of the agency is to "refine[] a general legislative policy," and "the review function of the court

---

[4] The Staff Measure Summary for House Bill 3677 A (2010) for the House Committee on Transportation is available at: https://olis.leg.state.or.us/liz/2010S1/Downloads/MeasureAnalysisDocument/13019 (accessed Apr 4, 2017).

is to see that the agency's decision is within the range of discretion allowed by the more general policy of the statute." *Id.* at 229. Thus, the Attorney General may exercise discretionary authority under ORS 646.608(1)(u) to regulate additional "unfair or deceptive" fuel price advertising so long as it does not conflict with the general legislative policy of ORS 646.930 or ORS 646.608(1)(u). *See Deupree v. ODOT,* 180 Or App 395, 403, 43 P3d 1122 (2002) (statute allowing ODOT to cancel permit in a particular circumstance did not prohibit ODOT from adopting rules to cancel permits in other circumstances so long as the rules were consistent with the general legislative policy).

Furthermore, in the absence of a definition of the term "conditions" in ORS 646.930, the Attorney General retained generalized authority under ORS 646.608(1)(u) to adopt rules to aid in the implementation of ORS 646.930, including the authority to define "conditions." *See Nay,* 360 Or at 694 (by defining the term "estate," the legislature did not grant the agency "generalized authority to determine what transactions should be set aside," it "reserved that task to itself"); *Springfield Education Assn.,* 290 Or at 230 (when the legislature expresses a general legislative policy, it delegates to the agency "the authority and responsibility to complete the legislation").

Additionally, the legislature could have expressly limited the unlawful trade practice of deceptive fuel pricing to violations of ORS 646.930 by making a violation of ORS 646.930 an unlawful trade practice as it has done in numerous other instances; instead, it granted the Attorney General broad rulemaking authority under ORS 646.608(1)(u) to protect consumers from deceptive fuel pricing. *See* ORS 646.608(1)(aa) - (zzz) (making violations of specific statutes an unlawful trade practice). For example, as illustrated in *Springfield Education Assn.,* 290 Or at 230,

"[t]he legislature can, if it chooses, enact more specific statutes as to liquor licensing policy and it could set utility rates from time to time by statute, but it does not. Rather, the agencies are empowered to regulate and, in so doing, to make delegated policy choices of a legislative nature within the broadly stated legislative policy."

For a person's conduct to constitute "any other unfair or deceptive conduct in trade or commerce" under ORS 646.608(1)(u), the Attorney General must adopt an administrative rule prohibiting that specific conduct. *See* ORS 646.608(4) ("An action or suit may not be brought under subsection (1)(u) of [ORS 646.608] unless the Attorney General has first established a rule * * * declaring the conduct to be unfair or deceptive in trade or commerce."). The Attorney General has adopted rules in OAR chapter 137, division 20, declaring deceptive gasoline price advertising an unlawful trade practice. OAR 137-020-0160(3) provides: "Violation of OAR 137-020-0150 and this rule is a violation of the Unlawful Trade Practices Act, ORS 646.608(1)(u)." The Attorney General adopted the definition of "condition" in 2010 to address the numerous complaints that the Department of Justice had continued to receive since ORS 646.930 was amended in 1985 "pertaining to disclosure of full service and added fees to use credit or debit cards." Oregon Bulletin, Volume 50, No. 2, p. 167-69 (February 2011); *see also* Notice of Proposed Rulemaking, Statement of Need and Fiscal Impact, filed Nov 9, 2010.

The legislative history of the Unlawful Trade Practices Act (UTPA) reveals that "it is to be interpreted liberally as a protection to consumers." *State ex rel Redden v. Discount Fabrics*, 289 Or 375, 386 n 8, 615 P2d 1034 (1980) (citing *Denson v. Ron Tonkin Gran Turismo, Inc.*, 279 Or 85, 90 n 4, 566 P2d 1177 (1977) (discussing the legislative history of the Oregon UTPA)). Recently, in *State ex rel Rosenblum v. Johnson & Johnson*, 275 Or App 23, 32, 362 P3d 1197 (2015), *rev den*, 358 Or 611 (2016), we highlighted the UTPA's underlying policies and basic structure:

> "The UTPA is a remedial statutory scheme, enacted as a comprehensive statute for the protection of consumers from unlawful trade practices. As such, it is to be construed liberally to effectuate the legislature's intent, to the extent that a proposed construction is supported by the operative text. Thus, our inquiry is pervasively informed by the appreciation that the UTPA is a remedial statutory scheme that should, to the extent consonant with the *Gaines* construct, be construed so as to effectuate its consumer protection purposes."

(Internal citations and quotation marks omitted.) Thus, we have stated, when the legislature enacted the UPTA, "the primary purpose of the Act was to protect *consumers*, rather than businesses." *Graham v. Kold Kist Beverage Ice, Inc.*, 43 Or App 1037, 1040, 607 P2d 759 (1979) (citing *Denson*, 279 Or at 90 n 4) (emphasis in original).

BP advocates for the opposite result; its interpretation of ORS 646.930 would protect its business interests at the consumer's expense and would substantially restrict the Attorney General's broad grant of rulemaking authority under ORS 646.608(1)(u) to declare certain conduct to be unfair or deceptive to consumers. We conclude that ORS 646.930 establishes the minimum requirements for a service station's posting of fuel prices, and it does not prohibit the Attorney General from adopting rules under ORS 646.608(1)(u) to identify and prohibit "any other unfair or deceptive conduct" concerning the display of fuel prices.

Although the definition of condition under OAR 137-020-0150(1)(b) may "enlarge" the number of conditions that must be displayed, the rule does not have the effect of "undermining the legislative intent," *Garrison*, 345 Or at 548-49; instead, it "coincides with the legislative policy" of the enabling statutes. *Springfield Education Assn.*, 290 Or at 228. In light of the Attorney General's broad grant of rulemaking authority under the UTPA, as well as our understanding of ORS 646.930's consumer protection purposes, we conclude that, in adopting the definition of "condition" under OAR 137-020-0150(1)(b), the Attorney General acted within the Attorney General's statutory authority and that the rule is valid.[5]

OAR 137-020-0150(1)(b) held valid.

**SERCOMBE, P. J.,** concurring.

### INTRODUCTION

The issue in this case is whether the rule amendments adopted by the Attorney General exceeded the Attorney

---

[5] As noted, BP assigns error to the other rule provisions in OAR 137-020-0150 that incorporate the definition of "condition." In light of our conclusion that the rule's definition of "condition" is valid, we need not address BP's challenges to those other provisions and we reject those arguments without discussion.

General's rulemaking authority because those amendments went beyond the rulemaking authority delegated by Oregon Laws 1985, chapter 751, to the Attorney General, or because the amended rules conflict with the operation of ORS 646.930 and are preempted for that reason. The majority largely ignores the first issue and decides the rule/statute conflict by determining that the rules are consistent with the "primary purpose" of ORS 646.930 as evidenced primarily by its legislative history. It opines that "the text, context, and legislative history of ORS 646.930 indicate that the primary purpose of ORS 646.930 has been to protect consumers from deceptive fuel pricing by establishing minimum requirements for a service station's posting of fuel prices," and further that "[t]he parameters for conditions established by OAR 137-020-0150(1)(b) are entirely consistent with that statutory policy." 284 Or App at 734.

With respect, the majority barks up the wrong tree, even though it is in the right forest. We generally decide issues of whether a rule exceeds an agency's authority to implement a statute by examining whether the operation of the rule conflicts with the express operation of the statute. To the extent, however, that the rule supplements the statutory policies, the analysis requires a determination of whether those supplementary policies are otherwise within the rulemaking authority of the agency.

That analysis requires focus on the *substance of the statute* and the rules to determine if a conflict exists, and not—as the majority posits—an examination of whether the rules are consistent with the *broad purpose of the statute* or the aspirations of the legislators who adopted the statute. Those latter considerations, of course, are relevant to determining the meaning of a statute when that is unclear. And, as noted below, I disagree with the majority on the meaning of ORS 646.930(2)(b) based on the plain meaning of the statute. The majority's recitation of the legislative history of the statute or its broad purpose might be relevant to construe the meaning of ORS 646.930(2)(b). Once that construction is made, the issue becomes whether the text of the statute conflicts with the text of the rules and not whether the rule is consistent with the primary purpose of the statute as shown by its legislative history.

The parties use the methodology that I describe to frame their arguments on review. Petitioner contends that the rule amendments conflict with the statutory policies by regulating differently the content of a service station street sign face and the display of dispensing devices, and imposing new regulations on the content of price sign displays. Petitioner further asserts that the rulemaking authority of the Attorney General is limited to rules that implement the statutory policies, and does not include rules that change or supplement those policies. The Attorney General denies that the statute and rules conflict and asserts that the rule amendments are within the scope of the 2010 changes to the statute and the delegated authority to the Attorney General to adopt rules to define unfair trade practices.

Resolving those contentions requires a detailed analysis of the statute and the rules to determine if a textual conflict exists; again an analysis eschewed by the majority in favor of a comparison of the purpose of the statute and the meaning of "condition" under the rules. Based on the following textual analysis, I conclude that the amended rules are not expressly preempted by the delegated rulemaking authority in Oregon Laws 1985, chapter 751, section 2, to "adopt rules to aid in the implementation of" the act. Nor are the rules implicitly preempted because they are irreconcilable or inconsistent with the statute. For those reasons, and because any supplementary rules are within the authority of the Attorney General under ORS 646.608(1)(u) to regulate "any other unfair or deceptive conduct in trade or commerce," the rules are valid.

## THE CONTENT OF THE STATUTE AND THE RULES

In a nutshell, the administrative rules under review regulate the displays of three different types of signs at a service station: street signs (signs "visible from a street or highway"), OAR 137-020-0150(1)(l); the price displayed on dispensing devices that a customer pays, OAR 137-020-0150(4); and "price signs," a "sign on top of the dispensing device ('pump topper'), on the island or on the side of the retailer's building[,]" OAR 137-020-0150(5)(c). The 1985 statute regulated the content of a street sign display, allowing that sign to display the lowest cash prices charged for

the sale of all grades of fuel and requiring the display of any conditions if "a cash price displayed on a sign is available only under some conditions[.]" ORS 646.930 (1985).

The Attorney General then adopted rules requiring the display of that cash price and conditions on street and price signs. In 2010, the statute was amended to require less display on a street sign, requiring only the display of the lowest cash price charged for the sale of the lowest grade of fuel. The 2010 amendments, however, also required that, if a street sign is used, the retailer must "display on a sign visible at or near any dispensing device [*i.e.*, price signs] all prices charged for the sale of all grades of gasoline, diesel or other fuel offered for sale." ORS 646.930(1)(b). The Attorney General then expanded the rules to require the display of any condition of sale for the prices charged for any grade of fuel on price signs, and rewrote the rules on the display of conditions on street signs. The issue between the parties is whether those expanded rules require additional content for street signs beyond that required by statute, and whether the price sign regulations are within the scope of the Attorney General's rulemaking authority. A more specific history of the statute and rules follows.

Oregon Laws 1985, chapter 751, amended ORS 646.875, which was subsequently renumbered as ORS 646.930, to include the following text:[1]

"(1)  A person who operates a service station, business or other place for the purpose of retailing and delivering gasoline, diesel or other fuel into the tanks of motor vehicles may display on a sign visible from the street the lowest cash prices charged for the sale of all grades of gasoline, diesel or other fuel.

"(2)  The following apply to a sign displaying prices under this section:

"(a)  The price per unit of measurement and the unit of measurement for a particular kind of fuel must be the same

---

[1] ORS 646.875 was originally promulgated in 1981. Or Laws 1981, ch 807, § 1. That act did not reference the display of the "lowest cash price" for fuel or the posting of "conditions" to obtain that price. That act also did not require the Attorney General to make rules to aid in its implementation.

on the sign as on any dispensing device used for delivering that kind of fuel into the tanks of motor vehicles.

"(b)   If a cash price displayed on a sign is available only under some conditions, the sign and the dispensing device must clearly state the conditions.

"(c)   If a price displayed on a sign is available only in a certain area of the service station or business, the area where the price displayed is available must be clearly identified.

"(3)   A person who displays a cash price that is available only under some conditions may not require, as a condition of buying fuel at the displayed price, that the buyer fill the fuel tank of the buyer's vehicle."

The act also mandated that, "[o]n or before January 1, 1986, the Attorney General shall adopt rules to aid in the implementation of" the act. Or Laws 1985, ch 751, § 2.

Pursuant to that direction from the legislature, the Attorney General adopted OAR 137-020-0150, which became effective on January 1, 1986. In that rule, the Attorney General adopted a variety of policies related to the content of the information that must be included on fuel price signs, and the manner in which that information must be displayed. In particular, the rule required that service stations must "[d]isplay clearly and conspicuously on each sign the lowest cash price for each grade of gasoline or diesel fuel offered for sale[,]" OAR 137-020-0150(3)(a) (Jan 1, 1986), and that the sign must "[s]tate clearly and conspicuously on the dispensing device and on the sign all conditions applying to the lowest cash price[,]" OAR 137-020-0150(3)(d) (Jan 1, 1986). At the same time, the Attorney General adopted OAR 137-020-0160. In that rule, the Attorney General declared a violation of OAR 137-020-0150 to be "a violation of the Unfair Trade Practices Act," citing ORS 646.608(1)(u). OAR 137-020-0160(3) (Jan 1, 1986). *See also* ORS 646.608(1)(u) (providing that "[a] person engages in an unlawful practice if in the course of the person's business, vocation or occupation" the person "[e]ngages in any other unfair or deceptive conduct in trade or commerce"); ORS 646.608(4) (providing that the Attorney General must "first establish[] a rule in accordance with ORS chapter 183 declaring conduct to be

unfair or deceptive in trade or commerce" before initiating a suit under ORS 646.608(1)(u)).

In 2010, the legislature adopted limited amendments to ORS 646.930. In Oregon Laws 2010, chapter 19, section 1, the legislature modified ORS 646.930(1)(a) to require that fuel price signs visible from the street display the lowest cash price for only the "lowest grades" of fuel available, rather than "all grades." Additionally, the act inserted ORS 646.930(1)(b), which states that, if a street sign is displayed, then the service station "shall display on a sign visible at or near any dispensing device all prices charged for the sale of all grades of gasoline, diesel or other fuel offered for sale." The legislature did not alter ORS 646.930(2).[2]

After the legislature adopted those statutory amendments, the Attorney General amended OAR 137-020-0150, citing the authority originally designated to the Attorney General in Oregon Laws 1985, chapter 751, section 2, to adopt rules to implement that act, as well as the Attorney General's authority under ORS 646.608 to regulate "any other unfair or deceptive conduct in trade or commerce." Oregon Bulletin, Volume 50, No. 2, p. 169 (February 2011). *See also* ORS 646.608(1)(u); ORS 646.608(4). The Attorney General explained that the purpose of the amendments was to address complaints received by the Department of Justice "that allege unfair or deceptive conduct pertaining to disclosure of full service and added fees to use credit or debit cards," in addition to "changes in the past 25 years [that] include different types of motor vehicle fuel, significant use of electronic dispensers, and loyalty cards," and issues related to "where and when gasoline prices and any conditions to the lowest cash price may be displayed and charged." Oregon Bulletin, Volume 50, No. 2, p. 167 (February 2011); Oregon Bulletin, Volume 49, No. 12, p. 14

---

[2] The majority appears to construe the reference to "a cash price that is available only under some conditions" in ORS 646.930(2)(b) to refer to *all* conditions— whether to obtain the cash price for the lowest grade or to obtain a special price other than the cash price. The majority rests this construction of the statute based on the dictionary meaning of "conditions" and the broad purpose of the statute "to protect consumers from deceptive fuel pricing by requiring the disclosure of additional information." 284 Or App at 730. With respect, that construction of ORS 646.930 is inconsistent with its text, which regulates only conditions on the availability of a cash price.

(December 2010). The new rule came into effect on January 1, 2011.

As amended, OAR 137-020-0150 expands the regulation of service station signs beyond the statutory requirement to display the lowest cash price for the lowest grade of fuel and conditions for the availability of that lowest cash price. The rule continues to require that street and price signs display any conditions to receive the lowest cash price for fuel, albeit restricted to the lowest cash price for the lowest grade of fuel. But, for at least price signs (and possibly street signs), the rule defines "condition" to not only include conditions for the availability of the lowest cash price for fuel, but also conditions for the availability of any other price charged for fuel. "'Condition' means any payment method (e.g., credit), service level (e.g., full service or mini service), or any other modifying circumstance affecting the price per unit of measurement of motor vehicle fuel from the lowest cash price[.]" OAR 137-020-0150(1)(b).

OAR 137-020-0150(3) regulates the displayed prices on signs addressed by the statute. It first sets out the amended statutory requirement that a street sign display "the lowest cash prices charged for the sale of the lowest grade of each type of motor vehicle fuel sold or offered for sale to all customers or potential customers," OAR 137-020-0150(3)(a), and that a price sign display "all prices charged for the sale of all grades of motor vehicle fuel sold or offered for sale," OAR 137-020-0150(3)(c).

OAR 137-020-0150(3)(d)(A) then provides that,

"If the lowest cash prices are available only under some conditions:

"(A)   The retailer must clearly and conspicuously display all conditions on each street sign, price sign and dispensing device (e.g., cash only, mini serve) * * *."

I construe this part of the rule to require only the display of all conditions to obtain the lowest cash price. The requirement to "display all conditions" is prefaced by a specific reference to "some conditions" for the availability of the lowest cash price. The reference to "some conditions" in the predicate phrase confines the required display of "all conditions"

to just those conditions. Moreover, the examples of conditions to be displayed, "cash only, mini serve," refer to conditions to obtain the lowest cash price and not conditions to obtain other prices. Thus, this part of the rule refers to a narrow set of conditions to obtain the lowest cash price, and not to the full set of conditions as defined by OAR 137-020-0150(1)(b). For street signs, then, that display requirement is the same as the display required by ORS 646.930(2)(b)—that street signs set out the conditions for the availability of the lowest cash price. OAR 137-020-0150(3)(d)(A) also requires the display of lowest cash price conditions on price signs and dispensing devices.[3]

As noted, other portions of the rule require the display of conditions other than those to receive the lowest cash price for price signs, and petitioner contends that those supplementary requirements exceed the Attorney General's rulemaking authority.[4] Specifically, petitioner points to the following parts of OAR 137-020-0150(5):

"Price signs:

"* * * * *

"(d)   If the price sign is on top of the dispensing device, the retailer must ensure:

"* * * * *

"(B)   That the following information is displayed on the price sign:

"(i)   All words or symbols of condition; and

"(ii)   Immediately adjacent to the words or symbols of condition, either:

---

[3] That requirement for dispensing devices is aped by OAR 137-020-0150(4)(f), which requires that, if "the lowest cash prices are available only under some conditions, * * * the dispensing device [must] clearly and conspicuously state[] all conditions." Again, I read that portion of the rule to require the display only of conditions to obtain the lowest cash price. That requirement is the same as ORS 646.930(2)(b) ("If a cash price displayed on a [street] sign is available only under some conditions, the sign and the dispensing device must clearly state the conditions.").

[4] I understand this to be the thesis of petitioner's conflict claim. Petitioner's criticism of other parts of the rule that use the term "condition" to describe the manner that a condition is displayed (size, use of symbols, visibility, the whole unit price, clarity, and conspicuousness) is immaterial to the analysis of that conflict claim. Similarly, petitioner's references to the rule's requirements for the displayed price for dispensed fuel are inapposite. *See* OAR 137-020-0150(4).

"(I)   The whole unit price of any condition for each grade of motor fuel; or

"(II)   The additional price per unit of measurement for any condition in whole cents (e.g., 'credit price + 3c/gal' or 'full service additional 10c/gal') for each grade of motor vehicle fuel. If the additional price per unit of measurement for a specific condition (e.g., credit) for each grade of motor vehicle fuel is the same, then only one price reference is required under this subparagraph.

"(e)   If the price sign is on the island or on the side of the retailer's building, the retailer must ensure:

"* * * * *

"(B)   That the following information is displayed on the price sign:

"(i)   All words or symbols of condition; and

"(ii)   Immediately adjacent to the words or symbols of condition, the whole unit price of any condition for each grade of motor vehicle fuel."

Thus, petitioner's claim that the rule conflicts with the statute amounts to two contentions: (1) that the Attorney General's rulemaking authority is limited by Oregon Laws 1985, chapter 751, section 2, "to adopt rules to aid in the implementation of" ORS 646.930 and that the rules impermissibly regulate signs in other ways; and (2) that the regulations requiring the posting of any condition to obtain any fuel price on the price sign, expanding the statute's required posting on street signs of conditions to obtain the lowest cash price, are outside the scope of the Attorney General's rulemaking authority under ORS 646.608. I turn then to the necessary legal analysis to resolve those contentions.

## PREEMPTION ANALYSIS

As noted, in rule validity cases where a rule is challenged as inconsistent with a statute, the validity challenge will be sustained if the operation of the rule directly conflicts with the substance of the statute or if the rule supplements the statute in excess of the agency's rulemaking authority. For example, in *Planned Parenthood Assn. v. Dept. of Human Res.*, 297 Or 562, 564, 573, 687 P2d 785 (1984), a DHS rule was challenged as unconstitutional. The court held that

challenge to be premature because it found that the rule exceeded the statutory authority of the agency. After concluding that the rule was within the general rulemaking authority of the agency, and that proper rulemaking procedures were followed, the court explained that "the next question is whether the substance of the action, though within the scope of the agency's or official's general authority, departed from a legal standard expressed or implied in the particular law being administered, or contravened some other applicable statute." *Id.* at 565.

Similarly, in *Managed Healthcare Northwest v. DCBS*, 338 Or 92, 95, 106 P3d 624 (2005), the court framed the rule validity issue as whether "an otherwise valid rule * * * conflicts with clearly stated statutory policy." In order to determine the "clearly stated statutory policy," the court "examine[d] the applicable statutory wording in its context to determine the legislature's intent." *Id.* at 96. *See also Garrison v. Dept. of Rev.*, 345 Or 544, 549, 200 P3d 126 (2008) ("[A] rule created within a statutory scheme cannot amend, alter, enlarge upon, or limit statutory wording so that it has the effect of undermining the legislative intent."); *Miller v. Employment Division*, 290 Or 285, 288, 620 P2d 1377 (1980) (framing the rule validity issue as whether the rule "conflicts with the clear, unambiguous words of [the statute]"); *Oregon Firearms v. Board of Higher Education*, 245 Or App 713, 723, 264 P3d 160 (2011) (agency rule prohibiting possessing firearms on institutional property preempted by ORS 161.170(1), which vested sole authority to regulate firearms with the legislative assembly).

OAR 137-020-0150 does not conflict with the words of ORS 646.930. As noted, the rule imposes the same requirements for cash price displays on a street sign that the statute does, requiring the display of conditions to obtain the lowest cash price. Like the statute, the rule requires price signs to display "all prices charged for the sale of all grades of gasoline, diesel or other fuel offered for sale." The rule "aid[s] in the implementation of" those statutory requirements under the express rulemaking authority in Oregon Laws 1985, chapter 751, section 2, by regulating the manner of price displays, requiring the display of all conditions for prices on price signs, and making violations of those limitations

"unfair or deceptive conduct in trade or commerce" under ORS 646.608(1)(u).

Importantly, ORS 646.930 does not expressly provide that the only restrictions on signage in service stations are those set out in the statute or that the rulemaking authority to "aid in the implementation" of the statute precludes any other rulemaking on service station signage by the Attorney General. Thus, there is no express conflict between the wording of the statute and the text of the rule.

That should be the end of the conflict analysis. Petitioner, however, argues that the statute impliedly preempts the rules because the legislature intended the statutory policies to state the only requirements for the display of pricing on service station signs and the exclusive scope of the Attorney General's rulemaking authority related to service station signs. That implied intent, however, is inconsistent with the text of the statute. As the majority notes, the statute plainly directs the Attorney General to adopt rules to impose additional limitations on signage to "aid in the implementation" of the statute's price display requirements for street signs, dispensing devices, and price signs.

Moreover, we do not construe statutes that delegate particular rulemaking authority to an agency (such as Oregon Laws 1985, chapter 751, section 2) to limit the agency's rulemaking authority under different statutes (such as the Attorney General's rulemaking authority under ORS 646.608) unless that limitation is explicit in the statute. The fact that the legislature has specifically directed an administrative agency to take certain actions does not preclude the agency from drawing on a broader delegation of statutory authority to take related, nonconflicting actions. *See Deupree v. ODOT*, 180 Or App 395, 403, 43 P3d 1122 (2002) (concluding that the fact that a statute expressly allowed ODOT to cancel permits in specific circumstances did not preclude ODOT from drawing on its statutory authority to cancel permits for other reasons where, in its judgment, it is "in the best interest of the public for the protection of the highway or road and the traveling public"); *Pacific Northwest Bell Telephone Co. v. Katz*, 116 Or App 302, 309-11, 841 P2d 652 (1992), *rev den*, 316 Or 528 (1993) (concluding that a

statute requiring the PUC to provide refunds in specific circumstances did not preclude the PUC from making refunds in other circumstances under its statutory authority to protect customers and the general public).

Petitioner does not dispute that the rules are consistent with the Attorney General's broad authority under ORS 646.608 to adopt rules defining unfair and deceptive trade practices or that the Attorney General complied with the proper procedures in amending OAR 137-020-0150.

Thus, there is no conflict between the *substance* of ORS 646.930 and the *substance* of the rules. Both policies require the display of the lowest cash price for the lowest grade of fuel on a street sign and the conditions to obtain that price. Both policies require the display of prices for all grades of fuel on price signs. The rule regulates the manner in which those prices are displayed, including the display of conditions to obtain any price displayed on a price sign. Regulation of the manner by which prices are displayed aids in the implementation of the statutory directives on pricing. To whatever extent the rule expands the statutory requirements in nonimplementing ways, that policymaking is authorized under ORS 646.608.

## CONCLUSION

I concur with the majority that the portions of OAR 137-020-0150 relating to "conditions" for any price of fuel on price signs, including OAR 137-020-0150(1)(b), are not inconsistent with ORS 646.930 and are otherwise within the Attorney General's rulemaking authority under Oregon Laws 1985, chapter 751, section 2, and ORS 646.608(1)(u).